**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mobley v. Banks*, Slip Opinion No. 2026-Ohio-2525.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2525

THE STATE EX REL. MOBLEY *v.* BANKS, INTERIM DIR.[1]

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mobley v. Banks*, Slip Opinion No. 2026-Ohio-2525.]**

*Mandamus—Public-records requests—Writ granted as to authorization-for-crisis-precaution form that inmate requested because respondent failed to show that form is a medical record exempt from Public Records Act within meaning of R.C. 5120.21(C)(1)—Writ denied as to requested emails and mental-health protocol because records custodian complied with Public Records Act when agreeing to provide the items upon payment of copying costs—Public Records Act imposes no affirmative duty on a public office to provide a requester with a statement of copying costs when informing the*

---

1. Mobley named Annette Chambers-Smith, who was then the director of the Ohio Department of Rehabilitation and Correction, as the respondent in this action. Ed Banks has succeeded Chambers-Smith as interim director of the department. We therefore automatically substitute Banks for Chambers-Smith as the respondent in this action. *See* S.Ct.Prac.R. 4.06(B).

*requester that advance payment is required—State ex rel. McDougald v. Sehlmeyer followed and State ex rel. Call v. Fragale distinguished—Writ denied as to requested certificate of disposal because inmate failed to establish that it exists—Inmate's request for statutory damages denied because custodian's assertion of medical-record exemption was reasonable and consistent with public policy underlying the exemption.*

(No. 2024-0219—Submitted March 11, 2025—Decided July 7, 2026.)

IN MANDAMUS.

_____

DEWINE, J., authored the opinion of the court, which FISCHER, DETERS, HAWKINS, and SHANAHAN, JJ., joined. KENNEDY, C.J., concurred in part and dissented in part, with an opinion. BRUNNER, J., concurred in part and dissented in part and would grant the writ as to the requested emails and mental-health protocol and would grant the request for statutory damages.

**DEWINE, J.**

{¶ 1} This is a mandamus action involving a request for public records. In a letter sent to the Ohio Department of Rehabilitation and Correction ("ODRC"), Alphonso Mobley Jr. requested copies of four items. The public-records custodian denied Mobley's request as to two of the requested items, stating that one item was an exempt medical record and that the other item did not exist. The records custodian told Mobley he could have copies of the remaining two items if he paid the copying costs. Mobley did not pay the copying costs or follow up to ascertain their amount. Instead, he filed a lawsuit, seeking a writ of mandamus ordering the director of ODRC ("the director") to produce paper copies of the requested items, as well as an award of statutory damages.

{¶ 2} Because the director has failed to show that one of the items is an exempt medical record, we grant a writ of mandamus as to that item, but we decline

to award statutory damages. We deny the writ as to two of the items because the custodian complied with the Public Records Act when he agreed to provide the items to Mobley upon the payment of copying costs. And we deny the writ as to the remaining item because Mobley has failed to establish that the record exists.

## I. FACTS

{¶ 3} In December 2023, Mobley sent a letter to ODRC asking for paper copies of four items: (1) emails between corrections officers concerning Mobley, (2) a "Certificate of Disposal," (3) an "Authorization for Crisis Precaution," and (4) "Mental Health Protocol I-8." Mobley's letter arrived on the desk of Jason Ware, the public-information officer for the correctional institution at which Mobley is incarcerated. Ware has a history with Mobley, having worked on several other public-records requests. And for those requests, Mobley has regularly paid for printed copies.

{¶ 4} Less than a month after he sent his letter, Mobley received Ware's reply. Ware responded to Mobley that he could have copies of the first and fourth listed items, "but he w[ould] have to pay" for printing them. Ware also informed Mobley that Ware had requested the certificate of disposal "through OSC." And Ware told Mobley the authorization-for-crisis-precaution form wasn't a public record.

{¶ 5} Mobley never responded to Ware. He did not pay the copying costs for the records that Ware had offered to make available, and he did not ask about the amount of the copying costs. Instead, Mobley filed the instant lawsuit asking this court to compel the director to provide him with the paper copies he had requested and to award him $1,000 in statutory damages.

{¶ 6} We previously denied the director's motion to dismiss, ordered the director to file an answer, and granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-1910. Because the director claimed that the authorization-for-crisis-precaution form is a medical record exempt from

the Public Records Act, we ordered the submission of that record under seal for in camera review. 2024-Ohio-5572.

## II. ANALYSIS

## A. Writ of Mandamus

{¶ 7} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). To be entitled to a writ of mandamus, Mobley must demonstrate by clear and convincing evidence that he has a clear legal right to the requested record and that the director has a clear legal duty to provide the record. *State ex rel. McDougald v. Sehlmeyer*, 2020-Ohio-4428, ¶ 7. As we explain below, Mobley has established by clear and convincing evidence that he is entitled to a writ of mandamus ordering production of the authorization-for-crisis-precaution form. He is not, however, entitled to mandamus relief as to the remaining requested documents.

*1. The director has not shown that the requested authorization-for-crisis-precaution form is an exempt medical record*

{¶ 8} Mobley argues that the director failed to comply with the Public Records Act by withholding the authorization-for-crisis-precaution form from him. The director argues the requested form is not a public record because it is a medical record of an inmate exempt from the Public Records Act. *See* R.C. 5120.21(C); former R.C. 5120.21(F) (now R.C. 5120.21(E)).[2] Because the form is being

2. When Mobley filed his mandamus complaint, the exemption was contained in R.C. 5120.21(F). *See* H.B. No. 510, 149 Ohio Laws, Part V, 9280, 9323. Effective March 20, 2025, the General Assembly amended the statute, and the exemption now appears in R.C. 5120.21(E). *See* 2025 Am.Sub.H.B. No. 196.

withheld based on a statutory exemption, the director has the burden to show that the exemption applies. *State ex rel. GateHouse Media Ohio Holdings II, Inc. v. Columbus Police Dept.*, 2025-Ohio-5243, ¶ 11, citing *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 27. "In determining whether the [director] has demonstrated that the statutory exception applies, our task is 'to provide a fair reading of what the legislature has enacted: one that is based on the plain language of the enactment and not slanted toward one side or the other,'" *id.*, quoting *Stingray Pressure Pumping, L.L.C. v. Harris*, 2023-Ohio-2598, ¶ 22.

{¶ 9} Former R.C. 5120.21(F) (now R.C. 5120.21(E)) provides that records of inmates committed to ODRC are not "public records" as defined in R.C. 149.43, except as provided in R.C. 5120.21(C)(2). R.C. 5120.21(C)(2) concerns inmates' medical records and allows an inmate to designate certain persons to whom the inmate's medical record may be made available, including an attorney or physician. Both the inmate and the person designated must make a written request for the medical record. *Id.* The director argues that the authorization-for-crisis-precaution form is a medical record and thus could be made available to Mobley only upon compliance with R.C. 5120.21(C)(2).

{¶ 10} "[M]edical record" is defined as "any document or combination of documents that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient *and* that is generated and maintained in the process of medical treatment." (Emphasis added.) R.C. 5120.21(C)(1); *see also* R.C. 149.43(A)(1)(a), (A)(3) (providing similar definition). To be exempt from disclosure as a medical record, a record must meet both requirements. *State ex rel. Baker v. Treglia*, 2025-Ohio-2816, ¶ 26, citing *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 2012-Ohio-115, ¶ 42.

{¶ 11} The director filed the requested authorization-for-crisis-precaution form under seal in compliance with our order. *See* 2024-Ohio-5572. The form lists three levels of observation to which a correctional institution might subject an

inmate: "Constant Watch may be authorized by mental health staff or [a] shift commander. Close Watch and Mental Health Special Observation Status may be authorized only by a psychiatrist, psychologist, LISW [licensed independent social worker], PCC [professional clinical counselor] or APN – MH [advanced-practice nurse—mental health]." (Italics deleted.)

{¶ 12} The form was completed on December 1, 2023, by Captain Lou Vamos and authorizes a constant watch of Mobley because of an apparent episode of mental distress. In his affidavit, Ware attested:

> I identified the form as exempt from release as a public record due [to] the shift supervisor initiating a constant watch by utilizing the Authorization for Crisis Precaution (DRC5200) if behavioral health staff are unavailable and the incarcerated person is suicidal. Constant watch is used for any crisis in which the highest level of control, containment and monitoring is indicated. This may include an incarcerated person who is actively suicidal, threatening, or engaging in self-injury, who poses a high risk for suicide or as an initial precaution prior to an evaluation by an ILMHP/CMPH. This form is used to reflect the placement of an offender on a mental health status.

{¶ 13} Neither party has directed us to a case in which a court has previously decided whether an authorization-for-crisis-precaution form is a medical record under R.C. 5120.21(C). To be considered a medical record, the form must "pertain[] to the medical history, diagnosis, prognosis, or medical condition of a patient" and must have been "generated and maintained in the process of medical treatment," R.C. 5120.21(C)(1). If a form was completed by a medical professional, it could be apparent from the form itself that it is a medical record.

*See Welsh-Huggins*, 2020-Ohio-5371, at ¶ 30; *Baker*, 2025-Ohio-2816, at ¶ 27 (records created by nurse to document victim's sexual-assault examination pertained to victim's medical history, diagnosis, prognosis, or condition and were generated in the process of medical treatment). In this case, however, the authorization-for-crisis-precaution form was not completed by a medical professional, and it is not apparent from the form itself that it is an exempt medical record.

{¶ 14} The director argues that even a form filled out by nonmedical personnel may initiate mental-health treatment by putting the inmate on constant watch until the mental-health staff can see him. While the episode of mental distress identified by Captain Vamos on the form "may touch upon [Mobley's] medical history," *O'Shea & Assocs.*, 2012-Ohio-115, at ¶ 42—and thereby meet the first requirement of the statute—there is no evidence of subsequent medical treatment showing that the form was "generated and maintained in the process of medical treatment," R.C. 5120.21(C)(1). The director submitted no evidence showing that an inmate placed on constant watch is always seen by behavioral or mental-health staff before he is removed from the watch. And even if the constant watch on Mobley was initiated because "behavioral health staff [were] unavailable," as Ware suggested in his affidavit, the director did not submit any evidence showing that Mobley was actually seen by behavioral or mental-health staff, such as a psychologist, after he was placed under constant watch. *See State ex rel. Multimedia, Inc. v. Snowden*, 1995-Ohio-248, ¶ 12, quoting *Black's Law Dictionary* (6th Ed. 1990) ("the word 'medical' refers to the 'science and art of the investigation, prevention, cure, and alleviation of disease,' which would arguably include reports of psychologists"). Thus, the director has failed to establish that the authorization-for-crisis-precaution form meets the second requirement of R.C. 5120.21(C)(1)—that it was "generated and maintained in the process of medical treatment." *See Baker* at ¶ 26.

{¶ 15} Because the director has failed to establish that the withheld authorization-for-crisis-precaution form falls within the statutory exemption for medical records, Mobley is entitled to a writ of mandamus ordering the director to produce that record.

*2. Mobley has not established he is entitled to the requested emails and Mental Health Protocol I-8*

{¶ 16} Mobley next argues that the director failed to comply with the Public Records Act by failing to answer his public-records request "in the affirmative or negative" and by failing to provide the requested emails and Mental Health Protocol I-8 within a reasonable time. But Mobley did receive an answer to his request— Ware agreed to provide the requested emails and Mental Health Protocol I-8 if Mobley paid the copying costs.

{¶ 17} This was an appropriate response. The Public Records Act requires a public office to make copies of requested records available to the requester "within a reasonable period of time," but the public office shall make the copies available "at cost," R.C. 149.43(B)(1), and "may require the requester to pay in advance the cost involved in providing the copy," R.C. 149.43(B)(6). This is what Ware did—he responded to Mobley's request by informing Mobley that he could have two of the requested records if he paid the copying costs in advance. Because this was all that was required of Ware at the time of Mobley's request, there was no duty to provide the requested records.

{¶ 18} Despite receiving this answer from Ware, Mobley complains that he has not received "a statement of costs for copies." But Mobley points to no legal authority requiring such a statement. In addition to the requested records, a requester has his choice of various mediums for having the records copied, depending on what mediums the public office has available. *See* R.C. 149.43(B)(6). The public office then "may require the requester to pay in advance the cost involved in providing the copy," *id.*, including costs of delivery, R.C. 149.43(B)(7).

So whether it's about the medium available for copying or the costs of copying and delivery, the Public Records Act's text anticipates a dialogue between the requester and the public office. Thus, while the text of the act *allows* a public office to require prepayment for copying, the text imposes no affirmative duty on a public office to provide the requester with a "statement of costs for copies" concurrent with informing the requester about the requirement for prepayment.

{¶ 19} Indeed, the concurring-and-dissenting opinion—despite canvassing other duties imposed by the statutory scheme—is unable to identify any such duty in the statutory text. *See* opinion concurring in part and dissenting in part, ¶ 44-50. Nonetheless, the opinion theorizes that such a duty "arises as the logical consequence of the statutory scheme." *Id.* at ¶ 56. But, of course, "[t]his court expects a statutory requirement to be 'written . . . into the statute.'" (Ellipsis in original.) *TWISM Ents., L.L.C., v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 62, quoting *Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 27-28 (1970). And conspicuously missing from the opinion's discussion of a public-records custodian's affirmative duties is a duty of the custodian to proactively calculate the costs of fulfilling the request and then send an invoice of the costs to the requester.

{¶ 20} Nor does our precedent impose such a duty. We have said the Public Records Act "contemplates that the requester and the public-records custodian [will] cooperate in fulfilling a request." *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 18. When the public office cooperates by timely responding, the requester "has an obligation to cooperate with the public-records custodian fulfilling a request, including an obligation to inform the public agency when she feels that a request has been incomplete or slow." *State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4914, ¶ 25.

{¶ 21} Our holding in *McDougald*, 2020-Ohio-4428, demonstrates this principle of cooperation. There, McDougald submitted a public-records request for

a use-of-force report involving him. The public-records custodian responded to McDougald's request by telling him he had insufficient funds to complete the request and to resubmit his cash slip when he had sufficient funds. *Id.* at ¶ 3. We noted that the Public Records Act does not require a public-records custodian to provide copies of records free of charge. *Id.* at ¶ 11. We then held that a requester who "never followed up with [the records custodian] to inquire how much a copy would cost" did not show that the custodian failed to fulfill her duties. *Id.* at ¶ 12. Thus, the public-records custodian "provided a complete response to McDougald's public-records request" by telling McDougald he could receive the requested record when he provided the necessary funds—no notification of costs necessary. *Id.* at ¶ 13.

{¶ 22} That is exactly what happened here. Ware cooperated with Mobley. He fulfilled his duties and "provided a complete response," *id.*, by telling Mobley that copies were available at cost, but Mobley did not reciprocate. The Public Records Act anticipates that people interact reasonably with each other and do the sorts of things that we all do in the normal course of life—and that includes asking the natural follow-up question, "How much?" when told we will have to pay for something.

{¶ 23} Thus, both the text of the Public Records Act and *McDougald* make clear that a public-records custodian has no affirmative duty to proactively inform a requester of the costs of copying documents. And nothing post-*McDougald* changes this. In *State ex rel. Ware v. Akron*, 2021-Ohio-624, a public-records requester sent the Akron Police Department two letters requesting copies of various records. Although the department received the letters, it did not respond. *Id.* at ¶ 3. Eight months later, the requester filed a mandamus action in this court against the City of Akron. Only after the requester had filed his complaint did the city respond to his letters with letters of its own, saying that it would provide copies to the requester once he paid for the costs of copying. *Id.* at ¶ 6. But the city's letters

didn't contain invoices stating how much the copies would cost; instead, the first time the requester learned of the copying costs was when the city filed an affidavit during the litigation. *Id.* at ¶ 6-8, 14.

{¶ 24} We took issue with "the city's failure to respond [to the records requests] for nearly nine months." *Id.* at ¶ 20. While we also chastised the city for its "apparent failure to include the invoices with its responsive letters," *id.* at ¶ 13-14, 20, the fault in the city's conduct—the duty it had failed to uphold—was that it didn't respond "within a reasonable period of time," R.C. 149.43(B)(1); *see id.* at ¶ 16-18. But here, the public-information officer, Ware, did cooperate with Mobley. When a public office has cooperated by timely responding and informing the requester of the prepayment requirement, the requester should then follow up about how much the copies will cost. *See DiFranco*, 2015-Ohio-4914, at ¶ 25. Mobley has worked with Ware before. He has paid for copies before and since. Yet he flouted his obligation to cooperate in this request when he stopped communicating with Ware and instead initiated this original action.

{¶ 25} In *State ex rel. Clark v. Dept. of Rehab. & Corr.*, the prison's public-information officer, whose duties included responding to public-records requests, referred the requester to another employee but, as in *Ware*, did not otherwise respond to the request. 2025-Ohio-895, ¶ 3. In the requester's mandamus action, the prison argued that the public-information officer had complied with the Public Records Act by referring the requester to another employee and that the requester should have proactively advanced copying costs. *Id.* at ¶ 11-12. We granted the writ, concluding that the public-information officer had a duty to respond to the request, and we ordered the prison to inform the requester of the copying costs and to provide the public record once the costs were paid. *Id.* at ¶ 12, citing *Ware* at ¶ 13-14. But *Clark* is distinguishable from the case at bar because nothing in *Clark* indicates that prison authorities ever affirmatively told the requester that documents would be produced if he paid the copying costs, *see Clark* at ¶ 3, 12, whereas here,

Ware told Mobley the records would be produced if Mobley paid the copying costs. Offering to provide something upon payment of costs is not a denial of a request.

{¶ 26} In an attempt to glean an affirmative duty to notify a requester of the costs of copying items, the concurring-and-dissenting opinion cites two pre-*McDougald* cases, but neither offer much support for its argument. *See* opinion concurring in part and dissenting in part at ¶ 58-64, citing *State ex rel. Mayrides v. Whitehall*, 62 Ohio App.3d 225, 227-228 (10th Dist. 1990), and *State ex rel. Call v. Fragale*, 2004-Ohio-6589, ¶ 6. The opinion first relies on *Mayrides*, an appellate-court decision, not a precedent from this court. And that case is easily distinguishable because there, the requester affirmatively asked to be informed of copying costs in his initial request, writing, "If necessary, please provide me with a reasonable estimate for any copywork needed or bill me for the copies as I am an indigent prisoner without funds." *Id.* at 228. Here, unlike Mayrides, Mobley never asked about the amount of copying costs—even after he was told that the public records would be produced upon payment of costs.

{¶ 27} The concurring-and-dissenting opinion also relies on our opinion in *Call*. There, we affirmed the denial of a writ of mandamus after a judge had told a public-records requester that 16 audio tapes of proceedings would be produced to him if he paid the cost of $20. *Call* at ¶ 3, 6. But we said nothing about whether the judge was required to specify the amount of the copying cost up front or what would have happened if the judge had initially simply informed the requester that the records would be produced upon payment of the cost.

{¶ 28} Thus, none of our cases undermine our holding in *McDougald* that a requester who fails to "follow[] up with [the records custodian] to inquire how much a copy would cost" cannot show that the custodian failed to fulfill her duties, 2020-Ohio-4428, at ¶ 12. And tellingly, the concurring-and-dissenting opinion makes no attempt to distinguish *McDougald*, because it cannot. Accordingly, because Mobley failed to follow up with Ware here, he is not entitled to a writ of

mandamus ordering the director to provide him with copies of the requested emails and Mental Health Protocol I-8.

### 3. *Mobley has not shown that he is entitled to the certificate of disposal*

{¶ 29} Regarding Mobley's second requested item, the director argues ODRC had no duty to produce a certificate of disposal because such a record does not exist. "When a public office attests that it does not have responsive records, the relator in a public-records mandamus case bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office." *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 13.

{¶ 30} Ware attests that after his response was relayed to Mobley, Ware was informed that no certificate of disposal responsive to Mobley's second requested item exists because manuals are not subject to disposal under the retention period. Mobley has not countered the director's showing that the requested certificate of disposal does not exist. Accordingly, Mobley has not shown that he is entitled to a writ of mandamus as to the second item listed in his public-records request.

### B. Statutory Damages

{¶ 31} A public-records requester is entitled to statutory damages "if a court determines that the public office . . . failed to comply with an obligation in accordance with [R.C. 149.43(B)]." R.C. 149.43(C)(2).[3] Here, Ware's denial of Mobley's request for a copy of the authorization-for-crisis-precaution form was a violation of the Public Records Act and may serve as a basis for statutory damages. But that does not necessarily mean Mobley is entitled to statutory damages for that violation.

---

3. This is the language of R.C. 149.43(C)(2) as enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023). This language now appears in R.C. 149.43(C)(3). *See* 2024 Sub.H.B. No. 265 (effective Apr. 9, 2025).

{¶ 32} When a public office has violated a clear legal duty, we may decline to award statutory damages if we determine that a well-informed public office familiar with statutory law and case law (1) would not have considered the public office's conduct a failure to comply with its obligations under R.C. 149.43(B) and (2) would have considered the public office's conduct as serving the public policy that underlies the authority it claims permitted that conduct. R.C. 149.43(C)(2)(a) and (b). Therefore, we must decide whether Ware's assertion that the authorization-for-crisis-precaution form was an exempt medical record was reasonable and whether that assertion served the public policy underlying the exemption for medical records.

{¶ 33} First, Ware's assertion of the exemption was reasonable. As explained above, whether the authorization-for-crisis-precaution form that Mobley requested is a medical record under R.C. 5120.21(C) is a close call. There is no case law on whether such a form is a medical record under the statute. *See, e.g.*, *State ex rel. Meyers v. Myers*, 2022-Ohio-1915, ¶ 61-62 (declining to reduce statutory damages because case law on point made public office's denial of record unreasonable). Given the novelty of the issue, the paucity of case law, and the fact that the director could have shown that the form is a medical record by submitting evidence of Mobley's subsequent medical treatment, a well-informed public office would not have considered Ware's conduct a failure to comply with R.C. 149.43(B). *See* R.C. 149.43(C)(2)(a).

{¶ 34} Second, Ware's assertion of the medical-records exemption was in line with the public policy underlying the exemption. The public policy served by R.C. 5120.21 is clear from its text. R.C. 5120.21 exempts an inmate's medical records from the Public Records Act unless the inmate and a designated attorney or medical professional both provide a signed written request. R.C. 5120.21(C)(2). Even then, the medical record is "inspected or copied by the inmate's designated attorney, physician, or nurse" only. *Id.* And a physician must indicate on the

14

medical record whether "presentation of all or any part of the medical record directly to the inmate will result in serious medical harm to the inmate." *Id.*

{¶ 35} Clearly, the policy served by R.C. 5120.21 is to protect potentially sensitive information in inmates' medical records. That policy is furthered by requiring a designated professional to join the inmate in requesting the medical record and by allowing the designated professional, but not the inmate, to inspect the record. Mobley's request for the authorization-for-crisis-precaution form was not joined by a designated professional. He desired to view its sensitive content himself. Ware's assertion of the medical-records exemption in response to Mobley's request therefore served the public policy underlying R.C. 5120.21.

{¶ 36} Because a well-informed public office would consider Ware's denial of Mobley's request for the authorization-for-crisis-precaution form reasonable and in service of the public policy underlying R.C. 5120.21, Mobley is not entitled to statutory damages for Ware's failure to produce the form.

### III. CONCLUSION

{¶ 37} We deny Mobley's request for an award of statutory damages, as well as deny his request for a writ of mandamus compelling production of the requested emails, Certificate of Disposal, and Mental Health Protocol I-8. We grant a writ of mandamus ordering the director to provide Mobley with a copy of the authorization-for-crisis-precaution form responsive to the third item listed in his public-records request.

Writ granted in part
and denied in part.

——————————

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 38} I agree with the court's judgment to the extent that it grants relator Alphonso Mobley Jr.'s request for a writ of mandamus ordering respondent, Ed Banks, interim director of the Ohio Department of Rehabilitation and Correction

("ODRC"), to produce the "Authorization for Crisis Precaution" that Mobley requested. I also agree with the majority's denial of the writ as to the "Certificate of Disposal" that Mobley requested.

**{¶ 39}** I disagree, however, with the majority's denial of the writ as to the other two items Mobley requested: (1) emails between corrections officers concerning him and (2) the "Mental Health Protocol I-8." In addition, the majority wrongly denies Mobley an award of statutory damages. Consequently, I concur in part and dissent in part from the majority's judgment today.

**{¶ 40}** At the outset, the majority opinion is right when it says that R.C. 149.43, Ohio's Public Records Act, contemplates that a public-records requester ("requester") and a public office or person responsible for public records ("custodian") will cooperate in fulfilling a public-records request. This conclusion is readily discernible in the text of the statute, not just in dicta from *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901.

**{¶ 41}** But contrary to the analysis of the majority opinion, the Public Records Act does anticipate that when the custodian requires *prepayment* of costs as a condition precedent to providing a copy of the public records requested, once the requester has told the custodian the preferred medium of production and method of delivery or transmission, the custodian must tell the requester both the cost of providing a copy of the public records in the medium the requester has asked for and the cost of delivery or transmission of the public records in the manner that the requester asked for. *See* R.C. 149.43(B)(6) and (7).[4] Therefore, when *prepayment* of costs has been made a condition precedent for a requester to receive public records, our caselaw recognizes a clear legal duty on the part of the custodian to communicate the cost of providing the public records to the requester. When a

---

4. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

16

custodian fails to comply with this duty, courts have issued writs of mandamus ordering the custodian to communicate the amount of those costs to the requester by relying on *State ex rel. Mayrides v. Whitehall*, 62 Ohio App.3d 225, 228-229 (10th Dist. 1990). *See, e.g.*, *State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 15. Because the custodian's duty arises from R.C. 149.43(B), statutory damages are available to enforce that duty. *See* R.C. 149.43(C)(2).

### Ohio's Public Records Act

{¶ 42} I agree with the majority opinion that the Public Records Act "anticipates" dialogue between the public-records requester and the custodian. Majority opinion, ¶ 18. But to the extent that the majority does not believe that the custodian has a duty to initiate communication with the requester about the cost for production and delivery or transmission of those records when prepayment has been made a condition precedent to producing and delivering the records, I disagree.

{¶ 43} Under the Public Records Act, a requester has an unambiguous duty: to "reasonably identify what public records are being requested." R.C. 149.43(B)(2). The custodian, however, has a variety of affirmative duties. If *after* the custodian complies with an affirmative duty to communicate the cost of producing the public records imposed by the Public Records Act and the requester then does not respond to the custodian by, for example, paying the costs for reproducing the records, a writ of mandamus will not lie.

{¶ 44} The following are just some of the affirmative duties that R.C. 149.43(B)(2) imposes on custodians.

#### *Duty to Organize and Maintain Public Records to Facilitate Access*

{¶ 45} The custodian is required to "organize and maintain public records" so that they are available for inspection and copying. R.C. 1493.43(B)(2). The *public office* itself is required to have readily available to the public "a copy of its current records retention schedule." *Id*.

### Duty When the Record Cannot Be Identified

{¶ 46} If a requester "makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records" *or* the custodian cannot "reasonably identify" the public record being requested, the custodian may deny the request but must (1) provide the requester with an opportunity to revise it and (2) inform the requester how the records are maintained and accessed. R.C. 149.43(B)(2).

### Duty When the Request Is Denied

{¶ 47} If the custodian denies the request "in part or in whole," the custodian must provide an explanation, "including legal authority," setting forth why the request was denied. R.C. 149.43(B)(3). That explanation must be in writing if the public-records request was in writing. *Id*.

### Duty to Prepare Records for Inspection or Copying

{¶ 48} The requested public records shall be "promptly prepared and made available for inspection to the requester," and if asked, the custodian "shall make copies of the requested public record" for the requester "at cost" and "within a reasonable period of time." R.C. 149.43(B)(1). If the requested record "contains information that is exempt from the duty to permit public inspection or to copy the public record," the custodian shall make available all the information in the record that is not exempt. *Id*. If the custodian makes a redaction, then either the redaction must be "plainly visible" or the requester must be notified of it. *Id*.

{¶ 49} If a person "requests a copy of a public record," the custodian is required to "permit the requester to choose to have the public record duplicated upon paper." The requester may also choose to receive the record either on the medium on which the record is kept or on any other medium on which the custodian "determines that it reasonably can be duplicated." R.C. 149.43(B)(6). The custodian "may require the requester to pay in advance the cost involved in

providing the copy of the public record *in accordance with the choice made* by the requester under [R.C. 149.43(B)]." (Emphasis added.) *Id*.

{¶ 50} Once the copy of the record is prepared, the custodian is required to "transmit [the] copy" by mail or by any other means of delivery or transmission within a reasonable time. R.C. 149.43(B)(7)(a). The custodian "may require the person making the request to pay in advance the cost of postage . . . or the cost of delivery." *Id*.

### The Majority Opinion Misunderstands the Statutory Scheme

{¶ 51} The foregoing statutory scheme requires the custodian to take some affirmative actions after any person requests to inspect or obtain a copy of a public record. When public records are requested, the statute permits the custodian to collect "the cost" for producing the public records and may require that those reasonable costs be paid "in advance." R.C. 149.43(B)(6).

{¶ 52} The statute requires the custodian to ask the requester not only on what medium the requester wants the records produced but also how the requester wants the records delivered or transmitted. Once that information is obtained from the requester, the custodian can calculate the costs of producing the requested public records.

{¶ 53} The majority opinion asserts that when the custodian invokes prepayment of costs as a condition precedent to producing the records, the requester must do something more. But what else is there for the requester to do?

{¶ 54} The requester has responded and told the custodian what records he or she wants, what medium he or she wants the records produced on, and how he or she wants the records delivered or transmitted. After doing those things, if prepayment of costs is required in advance, the only way the requester can comply is for the custodian to first tell the requester the associated costs. Only the custodian knows the number of pages contained in the record sought, what producing the records in the selected medium costs, and the cost to deliver or transmit the public

records to the requester by the requester's preferred manner of delivery or transmission.

{¶ 55} At this point, the requester has done his or her part, and all that remains to be done is the custodian's calculating the costs and invoicing them. This is the cooperation demanded of the custodian by the Public Records Act. To hold that the requester must do more to fulfill the condition precedent of payment in advance of obtaining the public records sought goes beyond the confines of the statutory scheme.

{¶ 56} The majority opinion is therefore wrong when it says that there is no duty in R.C. 149.43 to communicate to the requester the costs of fulfilling a request. *See* majority opinion at ¶ 18. That duty arises as the logical consequence of the statutory scheme when the custodian requires prepayment of costs under R.C. 149.43(B)(6) and (7). Essential to requiring prepayment of costs is communicating what the amount of those costs is.

{¶ 57} Consequently, when *prepayment* is made a condition precedent to obtaining public records, the burden is on the custodian to communicate the amount of the costs of production and delivery or transmission to the requester *after* the requester has chosen the medium of production and the method of delivery or transmission. And because the legal duty to communicate the costs of producing the requested record arises from R.C. 149.43(B), that duty is enforceable through an award of statutory damages under R.C. 149.43(C)(2). This court's caselaw supports this reading of the statute and our decision in this case.

### Our Caselaw

{¶ 58} These concepts are not new for this court. In *State ex rel. Ware v. Akron*, 2021-Ohio-624, this court recognized that the custodian has a legal duty to tell a requester the costs of producing public records when prepayment is required. In doing so, *Akron* relied on *Mayrides*, 62 Ohio App.3d 225 (10th Dist.), so I turn there first.

20

{¶ 59} In *Mayrides*, the Tenth District Court of Appeals granted a writ of mandamus ordering the City of Whitehall to "notify [Mayrides, the requester,] of the cost of the public records requested and, upon receipt of those costs, to provide copies to [him]." *Id*. at 228. Mayrides had requested a variety of public records related to his arrest and criminal conviction. *Id*. at 227. Whitehall admitted that the records requested were subject to disclosure under R.C. 149.43, but it required prepayment of the costs associated with production of the records. *Id*. at 227.

{¶ 60} Whitehall denied Mayrides's public-records request, concluding that he was "unable to pay for the cost of copying." *Id*. Whitehall made that determination because in his request, Mayrides said, "If necessary, please provide me with a reasonable estimate for any copywork needed or bill me for the copies as I am an indigent prisoner without funds." *Id*. at 228.

{¶ 61} Whitehall argued in the mandamus proceeding that Mayrides was not entitled to the writ because he was "unable to pay for the cost of copying the records." *Id*. In response, Mayrides stated that he had "never said he was unwilling to pay" but, rather, had suggested that Whitehall could "absorb the cost of copying . . . as a sanction." *Id*. at 227. The Tenth District did not immediately grant a writ ordering Whitehall to produce the requested records, because the city was entitled to collect the costs of production in advance of producing the records. *Id*. at 228. The court nevertheless issued a writ of mandamus ordering Whitehall to tell Mayrides the costs of obtaining the records and then, upon receiving payment, to provide the records. *Id*.

{¶ 62} This court first relied on *Mayrides* in *State ex rel. Call v. Fragale*, 2004-Ohio- 6589, ¶ 6. In April 2004, Call filed a petition for a writ of mandamus in the Third District Court of Appeals, asking that court to order the trial court to produce "an 'unmolested/unaltered certified copy of the original audiotapes' of his criminal trial, 'free of costs'" under the Public Records Act. *Id*. at ¶ 2. The trial

court had denied Call's request because it had already provided him with a free copy of the transcripts.

{¶ 63} The trial court filed an answer stating that it would provide Call with the audiotaped proceedings if he paid $20, the actual cost for the blank tapes required to make the copies. The trial court also moved for judgment on the pleadings. The appellate court then granted the trial court's motion.

{¶ 64} On Call's appeal here, this court did not address whether a custodian had a legal duty to tell a requester the costs to produce a public record when prepayment is a condition precedent to providing the records, because the trial court in *Call* had already done that "by offering to make copies at the $20 cost for the blank tapes." *Id*. at ¶ 6. We simply reiterated that (1) R.C. 149.43 requires that copies of public records be made available at cost and (2) when a requester requires the custodian to mail the copies of the records, the custodian may also require payment of the cost of postage and mailing supplies in advance. *Id*. at ¶ 6-7.

{¶ 65} In deciding *Akron*, 2021-Ohio-624, this court relied on both *Call*, 2004-Ohio-6589, and *Mayrides*. In February 2019, Kimani Ware sent two letters to the Akron Police Department requesting various public records. On October 16, after the city failed to respond to the requests, Ware filed a complaint for a writ of mandamus.

{¶ 66} On October 24, the city sent Ware two letters in response to his public-records requests. *Id*. at ¶ 6-7. In both letters, the city said that it would produce the requested records if Ware "paid the amount requested in the invoice that had been enclosed." *Id*. at ¶ 6. A copy of the invoices, however, was not part of the record. *Id*.

{¶ 67} Relying on *Call*, this court concluded that "the Public Records Act does not require a custodian to provide copies of public records free of charge." *Id*. at ¶ 13. Because the city was willing to provide the records to Ware once he had paid for the copies in advance, we declined to grant a writ of mandamus compelling

the city to provide the records. *Id.* Instead, citing *Mayrides*, we granted "a writ ordering the city to provide the invoices to Ware so he [could] decide whether he wishe[d] to pay for the copies." *Id.* at ¶ 15. We therefore recognized a clear legal duty on the part of the custodian to communicate the costs of obtaining a public record to the requester. Otherwise, we would not have issued the writ.

{¶ 68} This court relied on *Akron* in *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2025-Ohio-895. Clark requested a copy of the commissary price list and a master menu for three weeks. The public-information officer responded that the price list had been sent to all incarcerated people "via JPAY Blast" and that Clark should see his unit staff or ask the commissary for the price list and contact ODRC's food-service provider for the menu. *Id.* at ¶ 3.

{¶ 69} In response to a mandamus complaint that Clark filed, the custodian averred that Clark was not entitled to relief, because he "did not cooperate" by prepaying the cost of copying the requested records as instructed. *Id.* at ¶ 7. Evidence revealed, however, that the custodian did not tell Clark the cost of copying the records, and rebuttal evidence showed that if she had told Clark the cost of copying the records, then he would have "cooperated" and paid the costs as instructed. *Id.*

{¶ 70} This court did not grant the requested writ of mandamus ordering ODRC to produce the records; instead, relying on *Akron*, we held, "A public office may charge copying costs when producing records . . . . But the office must inform the requester the amount of the costs . . . ." *Id.* at ¶ 12. Because the custodian failed to do that, we held, "ODRC has not complied with its duties under the Public Records Act." *Id.* at ¶ 20. Therefore, we granted a writ of mandamus ordering ODRC to notify Clark of the costs of producing the records and to provide him with the records when the costs were paid. *Id.*

{¶ 71} The majority opinion misfires when it tries to distinguish *Clark*, 2025-Ohio-895. It says, "[N]othing in *Clark* indicates that prison authorities ever

23

affirmatively told [Clark] that documents would be produced if he paid the copying costs." Majority opinion at ¶ 25. The majority opinion fails to show that this is a distinction with a difference. In any event, the majority opinion in *Clark* states that the respondent "also aver[red] that Clark did not cooperate when she instructed him to complete his records request, in part because he never prepaid the copying costs for the requested records." *Clark* at ¶ 7. According to the majority opinion in *Clark*, the respondent told Clark to complete his records request by prepaying costs but never told him the actual costs for copies. *Id.* The same thing happened in this case.

{¶ 72} These cases recognize the basic principle that to be entitled to a writ of mandamus, the requester must demonstrate a clear legal duty on the part of the respondent to provide the requested relief. *Akron,* 2021-Ohio-624, at ¶ 12. So by granting writs of mandamus in *Akron* and *Clark*, we necessarily found a clear legal duty on the part of the custodian to communicate the cost of obtaining the records requested. That clear legal duty comes from R.C. 149.43(B). Therefore, a failure to comply with the duty to provide the costs of producing the public records violates R.C. 149.43(B) and statutory damages are available to remedy the violation under R.C. 149.43(C)(2).

{¶ 73} Statutory-damages awards under R.C. 149.43(C) "are not contingent on the good or bad faith" of the custodian but are "mandatory" when a custodian "fails to comply" with a duty under the Public Records Act, *Akron* at ¶ 18, and the factors for reducing or denying statutory damages under R.C. 149.43(C)(2)(a) and (b) do not apply here.

{¶ 74} And since Mobley made the three valid public-records requests for the authorization-for-crisis-precaution form, the emails, and the mental-health protocol in the same transmission, he is entitled to a single award of $1,000 in statutory damages. *See* R.C. 149.43(C)(2).

**Conclusion**

{¶ 75} In my view, the precedent this court established in *Akron*, 2021-Ohio-624, and *Clark*, 2025-Ohio-895, is in keeping with the Public Records Act. A custodian may require the prepayment of reasonable costs for producing a public record. But when the custodian requires payment in advance, after the custodian ascertains the requester's preferred medium and preferred method of delivery or transmission, the custodian has a duty to communicate those costs to the requester.

{¶ 76} The majority correctly issues a writ of mandamus to compel Banks to provide Mobley with a copy of the authorization-for-crisis-precaution form responsive to the third item listed in his public-records request. However, I would also order Banks to provide a statement of the costs of providing the copies of the public records responsive to the first and fourth items listed in Mobley's request. In addition, I would award Mobley $1,000 in statutory damages. For these reasons, I concur part and dissent in part.

_____

Alphonso Mobley Jr., pro se.

D. Andrew Wilson, Attorney General, and D. Chadd McKitrick, Assistant Attorney General, for respondent.

_____